416 S.E.2d 67

**Charles J. MARSHALL and Carolyn Marshall, His Wife, Plaintiffs Below,**

v.

**Ed FAIR, d/b/a Fetsko Forestry, Bill C. Moore, Individually, Defendants Below.**

**John D. Thorne and Lynn Beth McClung Thorne, His Wife, Defendants Below, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Third–Party Defendant Below, Appellee.**

No. 20474.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1992.

Decided March 24, 1992.

John M. Hedges, Charleston, for appellants.

Carol P. Smith, Kay, Casto, Chaney, Love & Wise, Charleston, for appellee.

McHUGH, Chief Justice:

This case is before the Court upon the appeal of John Thorne and his wife, Lynn Beth McClung Thorne, defendants below. The appellee · is Allstate Insurance Co., third-party defendant below. The appellants are aggrieved by the order of the Circuit Court of Kanawha County, granting the appellee's motion for summary judgment.

The plaintiffs below are Charles and Carolyn Marshall. Other defendants below are Ed Fair, doing business as Fetsko Forestry, and Bill C. Moore.

I

The pertinent facts are undisputed. The defendant Allstate issued a renter's liability policy to the Thornes for property located on Monongalia Street in Charleston. Lynn Thorne also possesses a future interest in property located on Klondike Road in the Big Tyler area of Kanawha County.

Lynn Thorne and her stepfather, who lives on the Klondike Road property, entered into a contract with Fetsko Forestry for the sale of timber on the Klondike Road property. Ed Fair, a defendant below, is the individual doing business as Fetsko, and Bill Moore, another defendant below, is an employee of Fetsko.

The plaintiffs, Charles and Carolyn Marshall, who own property adjacent to the Klondike Road property, instituted a civil action against the Thornes, Fair, and Moore, based upon three counts of statutory and common law trespass. Specifically, the plaintiffs allege in their complaint that the defendants damaged their (the plaintiffs') property by engaging in unauthorized harvesting of timber thereon.[1]

The Thornes notified Allstate of the plaintiffs' claims, and following a reserva-

tion of rights by Allstate and refusal to pay the claims, the Thornes instituted a pendent third-party action against Allstate, seeking a declaration of rights and obligations relating to coverage.

Following cross-motions for summary judgment, the circuit court entered judgment in favor of Allstate. This appeal ensued.

II

The issue in this case is whether the uninsured premises exclusion in the policy issued by Allstate to the Thornes applies to the plaintiffs' allegations against the Thornes.

Specifically, the uninsured premises exclusion provides: "We do not cover bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person. This exclusion does not apply to bodily injury to a residence employee."

■ Because the policy provision at issue in this case is exclusionary, we are guided by the following principle: "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *National Mutual Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). *See Bituminous Casualty Corp. v. Sheets*, 239 Va. 332, 389 S.E.2d 696, 698 (1990); *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., Inc.*, 227 Va. 407, 316 S.E.2d 734, 736 (1984). Accordingly, the uninsured premises exclusion provision in this case is to be strictly construed against the insurer, Allstate.

The question of coverage under the uninsured premises exclusion is one of first impression by this Court. However, a review of other jurisdictions reveals the overwhelming authority pertaining to this type of provision is that such an exclusion ap-

1. Fair has made no appearance in the case; Moore answered the complaint and filed a cross-claim against the Thornes seeking indemnification, costs, and expenses; the Thornes answered the complaint and filed a cross-claim against Fair and Moore.

plies only to *conditions* of the uninsured premises and not to *tortious acts* committed by the insured on the property of others.

Under a very similar factual scenario, the Court of Appeal of Louisiana held that the uninsured premises exclusion does not apply to deny coverage to the insured. In *Brodhead v. Scott,* 497 So.2d 1081 (La.Ct. App.1986), *cert. denied,* 501 So.2d 216 (La. 1987), the defendant engaged in the uprooting and clearing of trees on his uninsured premises. However, the defendant also uprooted and cleared trees from a strip of land belonging to the plaintiff, which adjoined the defendant's uninsured premises. The plaintiff successfully brought suit for the uprooting and clearing of trees on the plaintiff's property, but the defendant's insurer refused to pay the judgment, citing, among other things, the uninsured premises exclusion, which was similar to the one at issue in this case. The Louisiana court in *Brodhead* held that the uninsured premises exclusion did not apply to the facts involved, and therefore, coverage did exist to pay the judgment. Although the defendant in *Brodhead* resided in another city, the court held that the exclusion did not apply because the damaged property, that is, the *plaintiff's* property, is not additional property owned by the defendant. Consequently, the damaged property was not part of the defendant's "uninsured premises."

■ However, the determining factor is not necessarily *where* the tortious conduct takes place. Rather, under the overwhelming authority addressing the scope of the uninsured premises exclusion, as stated above, the key factor relates to the *condition* of the uninsured premises and not to tortious acts committed thereon.

In *MFA Mutual Ins. Co. v. Nye,* 612 S.W.2d 2 (Mo.Ct.App.1980), the plaintiff was struck by a riding lawnmower operated by the defendant, a fifteen-year-old boy. The accident occurred on the plaintiff's property where the defendant was mowing grass for the plaintiff's father. Under the uninsured premises exclusion provision, the defendant's insurer argued that coverage is excluded because the accident occurred on uninsured premises. In rejecting that argument, the court held that "under the terms of the policy, there is *floating* coverage for the insured *wherever* he might be, but coverage for defects in the land are excluded." 612 S.W.2d at 4 (emphasis supplied).

In reaching the conclusion that coverage is not excluded, the *Nye* court relied on the extensive discussion contained in *Lititz Mutual Ins. Co. v. Branch,* 561 S.W.2d 371 (Mo.Ct.App.1977). In *Lititz,* the court stated:

The personal liability insured against is of two kinds: first, that liability which may be incurred because of the *condition* of the premises insured; secondly, that liability incurred by the insured personally because of his *tortious personal conduct,* not otherwise excluded, *which may occur at any place on or off the insured premises.* The insurance company may well limit (and has by [the uninsured premises exclusion]) its liability for *condition* of the premises to the property insured for which a premium has been paid. It is reasonable that the company may not provide for liability coverage on *'conditions'* which cause injury on *other uninsured land.* It would be a rare case where an insured was liable for the condition of premises which he did not own, rent or control. It is to be expected, therefore, that the company's liability for condition of the premises would be restricted to accidents happening on or in close proximity to the insured premises, and that premiums would be charged with that in mind. It would be unreasonable to allow an insured to expand that coverage to additional land and structures owned, rented or controlled by him which are unknown and not contemplated by the company.

The company has not chosen to geographically limit the coverage provided for tortious personal conduct of the insured. If it had so intended, it could simply have provided that the exclusion ran to an accident 'occurring on' other owned premises. There appears to be

little reason to exclude personal tortious conduct occurring on owned but uninsured land, as little correlation exists between such conduct and the land itself. 561 S.W.2d at 374 (emphasis supplied).

Other courts have held similarly. *See, e.g., Safeco Ins. Co. of America v. Hale,* 140 Cal.App.3d 347, 189 Cal.Rptr. 463 (1983) & *Hingham Mutual Fire Ins. Co. v. Heroux,* 549 A.2d 265 (R.I.1988) (both holding that uninsured premises exclusion not applicable where horse wandered from uninsured premises and collided with automobile on public road); *Hanson v. General Accident Fire & Life Ins. Corp., Ltd.,* 450 So.2d 1260, 1262 (Fla.Dist.Ct.App.1984) (coverage is not excluded where plaintiff accidentally touched electric wire in helping defendant remove antenna because "accidental touching of the antenna to the uninsulated wire was totally unrelated to the condition of the [uninsured] premises."); *Economy Fire & Casualty Co. v. Green,* 139 Ill.App.3d 147, 93 Ill.Dec. 656, 660, 487 N.E.2d 100, 104 (1985) (coverage not excluded where defendant was allegedly negligent in caring for child who was struck by automobile on uninsured premises; because plaintiff's "injuries did not arise out of any defects of premises owned, rented or controlled by [defendant insured, then insurer's] premises exclusion is inapplicable and does not operate to preclude coverage of [defendant's] personal liability away from the insured premises."); *Kitchens v. Brown,* 545 So.2d 1310, 1312 (La.Ct.App. 1989) (plaintiff injured while clearing brush at defendant's personal residence, which was uninsured; uninsured premises exclusion in defendant's policy held not to apply because "the only manner of bodily injury or property damage that can arise out of premises is that which results from a defect in said premises."); *Newhouse v. Laidig, Inc.,* 145 Wis.2d 236, 426 N.W.2d 88, 90 (Ct.App.), *review denied,* 145 Wis.2d 912,

428 N.W.2d 559 (1988) (coverage not excluded where plaintiff child's injuries from accident involving a silo unloader were allegedly caused by negligence of defendant guardians in leaving child unattended because "it was the alleged tortious conduct of [the defendants] that caused [the plaintiff's] injuries. Accordingly, the exclusion is inapplicable.").

The appellants in this case urge this Court to follow the lead of the courts' opinions discussed above by holding that the phrase "arising out of" in the uninsured premises exclusion relates to the *condition* of the uninsured premises. Therefore, by construing the provision in that way, the policy would still provide floating coverage for the allegedly tortious acts committed by the appellants.

The appellee, Allstate, relies upon a federal district court's holding in *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of North America,* 501 F.Supp. 136 (W.D.Va. 1980), in support of its position that the exclusion does apply to the facts in this case. In *St. Paul Fire & Marine,* the policyholders, in an effort to improve their uninsured land, removed a building situated thereon by fire. The fire spread to adjoining land, and caused damage to the plaintiff's property. The *St. Paul Fire & Marine* court, in holding that the exclusion did apply (thereby denying coverage), applied a "but for" causation analysis to the phrase "arising out of." That court stated: "There would have been no fire but for the building which the insureds desired to remove. Accordingly, the insureds' liability resulting from the fire arose out of their [uninsured] premises." 501 F.Supp. at 139. The appellee contends that a similar analysis applies to the timber removal in this case.[2]

---

2. The appellee, Allstate, in its brief before this Court, points to the intentional acts exclusion in the insurance policy, asserting that that provision is a basis for denying coverage.

This assertion has no merit. As the appellants point out, there is nothing in the record to indicate that this argument was raised in the circuit court, and accordingly, it was not addressed by that court as a basis for its ruling. Moreover, the underlying complaint alleges intentional *and* negligent conduct on the part of the Thornes. Therefore, as the appellants note in their brief before this Court, if the lower court finds *only* negligence on their part, Allstate could not utilize the intentional acts exclusion as a basis for denying coverage.

The appellants deem the decision in *St. Paul Fire & Marine* aberrational and point out that it is specifically rejected by the Court of Appeals of Wisconsin in *Newhouse v. Laidig, Inc.*, 145 Wis.2d 236, 426 N.W.2d 88 (Ct.App.), *review denied*, 145 Wis.2d 912, 428 N.W.2d 559 (1988): "[W]e consider the interpretation of the phrase 'arising out of' as stated in *St. Paul Fire & Marine* to be inconsistent with Wisconsin's policy of strictly interpreting exclusionary clauses." 426 N.W.2d at 91.

We agree with the Wisconsin court's rejection of *St. Paul Fire & Marine* as well as the conclusions reached by the courts cited above, especially in light of this Court's policy that exclusionary provisions in an insurance policy are to be strictly construed against the insurer and in favor of the insured.

Consistent with the foregoing, we hold that bodily injury and property damage "arising out of" uninsured premises, as that phrase is used in an uninsured premises exclusion provision, refers to the condition of the uninsured premises and does not exclude coverage for the allegedly tortious acts of the insured committed on either such uninsured premises or on premises closely related to the uninsured premises.

### III

The appellants also contend that they are entitled to reasonable attorney's fees inasmuch as they were compelled to seek declaratory relief.

Our general principles with respect to the entitlement of an insured to attorney's fees from the insurer are set forth in syllabus points 1 and 2 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986):

1. Where an insured is required to retain counsel to defend himself in litigation because his insurer has refused without valid justification to defend him, in violation of its insurance policy, the insured is entitled to recover from the insurer the expenses of litigation, including costs and reasonable attorney's fees.

2. Where a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation.

The appellee, Allstate, urges this Court to hold that, even if it were to find that *coverage* exists, it would only be required to pay attorney's fees in the amount of one-third of the policy's face amount. This contention is based upon the following: (1) Allstate initially provided coverage and a defense under a reservation of rights for the claim by the plaintiffs against the appellants; (2) Allstate only denied coverage for Moore's cross-claim as that was based on "material misrepresentation;" and (3) the circuit court granted summary judgment in favor of Allstate, thus, providing valid justification for refusal to defend.

The appellee, in support of its argument that it should only be compelled to pay a maximum of one-third of the policy's face amount as attorney's fees, urges this Court to apply a similar rationale as that discussed in *Firstbank Shinnston v. West Virginia Ins. Co.*, 185 W.Va. 754, 762, 408 S.E.2d 777, 785 (1991), where this Court restated our observation in *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 329–30, 352 S.E.2d 73, 80 (1986), that "reasonable attorneys' fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large." However, our opinion in *Hayseeds* went on to point out that "when a claim is for under $20,000 or for over $1,000,000 ... the court should then inquire concerning what 'reasonable attorneys fees' are."

In this case, the underlying complaint, which names several defendants, seeks damages in the amount of $250,000. It is yet to be determined the specific amount of liability apportioned to the underlying defendants, including the Thornes. Consequently, the specific amount of the claim by the Thornes against Allstate is unknown. Rather, in this case, we only ad-

dress the question of coverage *per se* under the insurance policy. Moreover, there is no record from the circuit court with respect to the question of attorney's fees recoverable by the Thornes because the essence of that court's order was that coverage does not exist. Consequently, it was unnecessary for the circuit court to address the question of attorney's fees prior to this appeal.

■ However, we do reiterate the factors to be considered in determining reasonableness of attorney's fees in this type of case, in the event the circuit court is confronted with this question upon a subsequent disposition of this case:

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 4, *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986).

## IV

Consistent with the foregoing, the judgment of the Circuit Court of Kanawha County is reversed.

Reversed.